## ANTHONY HANRAHAN *vs.* JAMES A. O'REILLY.

Bowling alleys, with their usual appurtenances, erected by a tenant, with the consent of the landlord and "for the purpose of profit," in a room leased "for hall purposes," are trade-fixtures which the tenant may remove before the end of his term, although they are nailed to the floor, and the drawing of the nails will do some injury to the building.

A tenant of a building is not estopped, as against the grantee of his landlord, to remove, before the end of his term, trade fixtures which he has erected therein, by bidding, without disclosing his claim to remove them, at the sale of the building by auction at which the grantee buys it.

BILL IN EQUITY filed February 25, 1869, by the grantee of real estate in Springfield, consisting of a lot of land with a building thereon, to enjoin a tenant of the grantor, subject to whose lease the plaintiff bought the premises, from removing some bowling alleys from the building. An interlocutory injunction was granted; and an answer filed in which the defendant claimed the right to remove the alleys as trade fixtures.

At the hearing before the chief justice, it appeared that on August 1, 1864, the plaintiff's grantor leased to the defendant for four years and seven months "the second floor of the building," "to be used for hall purposes," and soon afterwards, with the consent of his lessor, the defendant, "for the purpose of profit," put in the hall six bowling alleys. "The floor of each alley was laid on cleats placed about a foot apart, and running crosswise. These were nailed to the floor of the building with shingle nails. On each side of the alley a board was nailed to the cleats, and also to the floor. A board was also nailed to each end of each alley, and to the floor. Between two of the

alleys a latticed partition was placed, which was about six feet high. It was placed in grooves cut in blocks of wood, the blocks being nailed to the floor, There were also temporary runs for the balls. The floor was cut at the end of each alley for the balls to drop. The floor of the building was white pine, and the alleys could not be removed without drawing the nails, and thus doing some injury to the building; but the injury would be small. There was also a temporary balcony, fastened to the building by the lessee, about as firmly as the bowling alleys. The fixtures cost about nine hundred dollars."

It further appeared that the plaintiff bought the premises at auction, and received his deed on April 1, 1868, expressed to be subject to the defendant's lease; that the defendant was present and made bids at the auction, and " nothing was said by either party as to the ownership of the fixtures; " and that at the time when the bill was filed the defendant had taken up the alleys and was preparing to remove them. The case was reported by the chief justice for the determination of the full court.

*W. L. Smith,* (*H. Donnelly* with him,) for the plaintiff. 1. The premises were conveyed to the plaintiff subject to the defendant's lease, but without any exception or reservation as to fixtures. Fixtures which a tenant is allowed to disannex and take away, are either domestic fixtures or such as are erected for the purpose of trade. But bowling alleys cannot be included in either of these classes. They are erected for the purpose of mere amusement, or for gambling; are barely tolerated by the law; and the keeping of them is not to be recognized as a trade. The fact that these alleys were erected "for the purpose of profit" does not constitute them trade fixtures. The advancement of commercial interests and promotion of agriculture and the useful arts is the intention of the law in excepting trade fixtures from the common law rule. If not included in either of these two classes of fixtures, bowling alleys erected by a tenant must be deemed to be part of the realty, and cannot be removed by him. The report finds also that these alleys could not be removed without injury to the building. The lessor consented that they might be erected; but it does not appear upon

Hanrahan *v.* O'Reilly.

what consideration he consented, nor that he consented that they should be torn out of the building at the expiration of the defendant's term.

2. The defendant was present at the auction, and allowed the plaintiff, without notice or objection, to become the buyer and pay a large sum of money for the property; and was thereby estopped to claim the fixtures. *Gray* v. *Bartlett,* 20 Pick. 186 193. *Dewey* v. *Field,* 4 Met. 381, 384. Still further, he himself bid on the property as the property of his lessor, and thereby disavowed any interest in or claim to it, and concurred in the sale. *Chiapella* v. *Brown,* 14 Louisiana Annual, 189. *Otis* v. *Sill,* 8 Barb. 102. It does not appear that he bid under any ignorance or misapprehension of his rights. He knew all the facts, and must be considered to have purposely misled the plaintiff. *Osgood* v. *Nichols,* 5 Gray, 420. The allowance of his claim will open a door to conspiracy and fraud, and tend to restrain conveyances of real estate.

*G. M. Stearns,* for the defendant, was not called upon.

AMES, J. The original rule of the common law subjected everything that was affixed to the freehold to the law governing the freehold. But the law of fixtures has grown into a system, which almost renders the right of removal a general rule, instead of an exception. The ancient rule has been especially relaxed, and rendered more liberal, in its application to the relation of landlord and tenant. It seems now to be well established by the cases, that things which the tenant has at his own expense affixed to the freehold for purposes of ornament or domestic convenience, or for purposes of trade, business or manufactures, may be removed by him before the expiration of his term. The right of removal depends upon the mode in which the thing to be removed is annexed to the freehold, and the effect which its removal would have upon the premises. It may be exercised in such a case, wherever it is not contrary to any prevailing usage, and causes no material injury to the estate, and where the thing can be removed without losing its essential character or value as a personal chattel. Under this rule, chimney-pieces, wainscot, grates, furnaces, cider-mills, buildings resting on blocks, and

many other things of like nature have been held to be removable by the outgoing tenant. *Elwes* v. *Maw*, 3 East, 38. *Doty* v. *Gorham*, 5 Pick. 487. *Gaffield* v. *Hapgood*, 17 Pick. 192. The numerous cases cited by the textwriters are quite sufficient to bring the defendant's bowling alleys in this case within the list of things removable as falling under the description of "trade fixtures." 2 Kent Com. (6th ed.) 343. Ferard on Fixtures, (2d Am. ed.) 17–42. He is described as occupying the premises "for hall purposes;" and the alley was apparently constructed for a temporary use, incident and subordinate to his occupation. *Wall* v. *Hinds*, 4 Gray, 256. *Bliss* v. *Whitney*, 9 Allen, 114. *Van Ness* v. *Pacard*, 2 Pet. 137.

The fact that the defendant was present at the auction at which the property was sold, and was himself a bidder without disclosing the claim upon which he now relies, is entirely insufficient to make out the estoppel for which the plaintiff contends. There is nothing to indicate that it was intended, or had any tendency, to mislead the plaintiff, or to control or influence his conduct. Indeed we see no reason to say that the defendant's conduct at that auction was at all inconsistent with or contrary to the claim which he makes in this suit. Estoppels are certainly entitled to no peculiar favor, and to call this conduct of the defendant an estoppel would be going very far beyond the bounds of principle and authority. *Plumer* v. *Lord*, 9 Allen, 455. *Andrews* v. *Lyons*, 11 Allen, 349.       *Bill dismissed, with costs.*