JOHN SILER ET AL. V. GLOBE WINDOW GLASS CO. ET AL.

TENANT MAY REMOVE TUBING, CASING AND DRIVE PIPE.

> A tenant under a gas and oil lease who has drilled a well which produces neither gas nor oil in paying quantities, and which he has abandoned on that account, has the right to remove the tubing, casing and drive-pipe from such well at any time prior to the expiration of his lease. The things referred to are trade fixtures and are not governed by the law pertaining to leases for agricultural pursuits.

HEARD ON ERROR.

*Jason Blackford*, for plaintiffs.
*Ross & Kinder*, for defendants.

PRICE, C. J.

The plaintiff, John Siler, as the surviving husband of Catherine Siler, and the other plaintiffs, as her heirs at law, now own lot 2841 in Shaffer's addition to the city of Findlay, Ohio. On September 9, 1891, Catherine Siler, the then owner, executed and delivered to Henry Flater an oil and gas lease, conferring upon him the right to drill the premises for oil and gas, to operate the same for a consideration of one-eighth royalty, from all wells producing oil up to fifty barrels per day, and one-sixth of the oil from all wells producing over fifty barrels per day; and if gas should be found, the lessor should receive $25.00 for each million cubic feet of gas produced. The terms of lease extend to the heirs and assigns of the parties.

Flater assigned the lease to the window glass company and by transfer to David B. Gratly, defendant, he is now the owner of the same and defends in this action. In October, 1892, a well was drilled on the lot under the provisions of the lease which, after being fully cased and completed, produced gas sufficient to supply fuel for two or three dwellings on or near the lot, but not in sufficient quantities to market off the premises at any profit. For supply to these dwellings the evidence shows the well would be worth $50.00 per year to their occupants, and that plaintiffs occupy one of these residences.

The lease is for a term of fifteen years, and as much longer as gas or oil is found in paying quantites. The well never produced oil, and has no value for oil purposes, nor has it any value as a gas well except for fuel for two or three residences as before stated. The lease, by its terms, has about six years yet to run, but the defendant has wholly abandoned the well, and has removed all machinery and all fixtures except the tubing, drive-pipe and casing, which he was about to draw and remove, when enjoined from so doing in this action.

The plaintiffs claim that defendant has no right to, or title in, the tubing, drive-pipe and casing, and that to remove them would permit water to enter and destroy the well for gas purposes; but it is not alleged or claimed that he neglects or refuses to plug the well as required by Sec. 4379, Rev. Stat. It is very plain from the facts, that the production of gas is of no profit or benefit to the lessees. The lease contains

Siler v. Glass Company.

this provision: "If gas is found in sufficient quantities to utilize, the consideration in full to the party of the first part shall be $25.00 per million, or at the rate of $25.00 per million cubic feet per annum for each well drilled on the premises herein described and so used."

In the printed part of the lease, there was originally this clause: "And the privilege of using enough gas to heat house on said premises," but these words were cancelled by a line run through them, and there is no right in the lease for the lessor to use gas for dwelling house or any other purpose.

By another provision of this lease, "the lessee is given the right of way over across the premises to the place of operating * * * and the right to remove any machinery or fixtures placed on the premises by them" (lessees).

Has the lessee, when the well fails to produce gas that can be utilized to the benefit of the parties, the right to remove the casing, drive-pipe and tubing from the well and the premises, during the term? And are such things fixtures within the provisions of the lease and the law?

It is expressly permitted that the lessee may remove machinery and fixtures, and we need not discuss that.

But plaintiffs claim that the casing, drive-pipe and tubing, when put in a well by the tenant, became part of the real estate, and as such, are not subject of removal.

This proposition is true of some things which the tenant may attach to the realty, but there is no inflexible rule that applies to the relation of landlord and tenant. Under leases such as is now under consideration, the lessee furnishes the drive-pipe, casing and tubing. They are his personal property, and to comply with the covenants of his lease, he must drill the well and place this personal property therein as a necessary part of the apparatus to drill and operate it. The drilling and operating oil and gas wells under leases, has become a trade or business of collossal proportions, requiring the expenditure of large sums of money, and drive-pipes, casing and tubing are of the nature of trade fixtures, and they are not to be judged by the rules which apply to agricultural pursuits. This distinction is made in Wood's Landlord and Tenant, page 895. The test of physical annexation has been overturned, and the intention of the tenant has, in most cases, taken its place as to trade fixtures. See Hill v. Sewald, 53 Penn. St., 272 [91 Am. Dec., 209]; Hanrahan v. O'Reilly, 102 Mass., 201.

We quote from Wood's Landlord and Tenant, Sec. 528:

"The old cases upon this subject leant to consider as realty whatever was annexed to the freehold by the occupier. But in modern times the leaning has always been the other way — in favor of the tenant—in support of the interests of trade, which has become the pillar of state. What tenant will lay out his money in costly improvements of the land if he must leave everything behind him which can be said to be annexed to it? Shall it be said that the great gardeners and nurserymen in the neighborhood of cities and towns, who expend thousands of pounds in the erection of green-houses, hot-houses, etc., are obliged to leave all these things upon the premises, when it is notorious that they are even permitted to remove trees, or such as are likely to become such, by the thousands, in the necessary course of their trade? If it were otherwise, the very object of their holding would be defeated, etc."

Van Ness v. Packard, 27 U. S. (2 Pet.), page 137, is a case where one leased premises for dairy purposes for a term of years. He erected thereon for the prosecution of his business, a frame dwelling house, with a cellar and stone or brick foundation. Prior to the expiration of his lease he tore down the building and converted the material to his own use, and the landlord sued as for waste. Justice Story delivered the opinion of the court, affirming the tenant's right to remove the buildings at any time before the expiration of his term, and adopted the doctrine of Elvres v. Maw, 2 Smith's Leading Cases, 153. The court further said:

"It has been suggested at the bar, that this exception in favor of trade has never been applied to cases like that before the court, where a large house has been built, and used in part as a family residence. But the question, whether removable or not, does not depend upon the form or size of the building, whether it has a brick foundation or not, or is of one or two stories high, or has a brick or other chimney. The sole question is whether it is designed for purposes of trade or not."

When we keep in mind the thousands of dollars which oil and gas tenants invest in the tubing, drive-pipe and casing necessary to drill and operate wells, many of which produce nothing to remunerate them, it is not difficult to apply the principles of these and many other authorities that might be cited.

We consider these articles trade fixtures and governed by rules pertaining to that class of property, and they may be removed before the lease has expired.

The plaintiffs are not entitled to an injunction, and their petition is dismissed at their costs.