Hoffheimer, J.
The receivers of the Mihalovitch-Fletcher Company are engaged in selling, at public auction, the personal property of said defendant company. Included in said property is a certain automatic fire sprinkler system, which is fully described in paragraph 2 of the answer of the receivers to the intervening petition of Sallie F. Pritchard, the lessor. This sprinkler system, the receivers claim, was installed in lessor’s building by the Mihalovitch-Fletcher Company after the execution of a lease under which said defendant company occupied the premises-, and at a cost of $13,000.
The receivers contend that they are justified in severing and removing the component parts of the sprinkler system, for the reason that same is a trade fixture, and because said system was never annexed with the intention of making it a pai’t of the lessor’s property.
On the other hand, the lessor contends that said system is not a trade fixture, and furthermore, that the tenant (receivers) is debarred from the privilege of removing same, because the system was installed as a condition of the lease; that it was, part of the consideration thereof, and that the lease, itself, furnishes the basis upon which the rights of the parties must be detennined.
The question of determining whether or not an article affixed by a tenant to demised property is a trade fixture, has ever been a most perplexing one, and in the case at bar is further involved by the lease in question.
The lease in this case provides that:
‘ ‘ The lessee further agrees to equip the buildings on the within demised premises, front and rear, with an .automatic sprinkler *220 system at his own expense, work on the same to commence at once upon the execution of this lease. ’ ’
There was also the usual clause to deliver up the premises in good order, at the expiration of the term, damage from ordinary wear and tear excepted. The premises demised consisted of the realty (described by metes and bounds). And also—
“The factory buildings erected thereon, and all additions thereto that may be erected thereon during'the continuance of this lease; said premises being known as Nos. 516 and 518 East Pearl street, together with all boilers, engines and attachments and connections thereunto belonging, tanks, pumps, shafting, hangers, pulleys, belting, steam heating appliances and elevators situated therein.”
Even if this automatic fire sprinkler system was a thing which ordinarily would be held to be a trade fixture, inasmuch as the lessee may qualify or waive his right in regard thereto, the question would be, if this was a trade fixture, has the lessee waived his rights, if any, by the lease itself?
All that the lessee agreed to deliver up at the,end of the term is to be found in the description above set out. But certainly this automatic sprinkler system does not fall within any of the descriptive language used, unless, as- lessor (intervehor) insists, it comes within the meaning of the word “additions.”
But it is not an addition either under the evidence or within the technical significance of that term as defined by the authorities. The use of the words “erections” or “additions” in leases has a well defined meaning, and refers to buildings only. See Bronson on Fixtures, page 232, and cases cited.
The express language used by the parties themselves, therefore, would seem to indicate that the special covenant, although imposing a condition, did not contemplate that the thing to be done was to become, when done, an inseparable part of the freehold and hence to be delivered up at the end of the term as a part of the described premises. Hence, inasmuch as lessee was not to deliver it up, by fair implication, he had the right to remove it, provided it was a trade fixture. At any rate, the most that could be said would be that there is nothing in the lease itself regarding the removal of this article.
In the very recent case of Montello Brick Company v. Trexler, 167 Fed. Rep., 482 (February 15, 1909), there was a lease for a *221 long term of three brick plants and a separate tract of farm land, described as included therein the real estate, “together with all its brick plant works * # now held or owned or leased by lessor, or which ■ " # * may be acquired by lessor, and all erections; extensions or additions to the same which may at any time hereafter be located or constructed on the premises,” and required the lessee, on the termination of the lease, to return “the demised premises in good order and condition, with all improvements, additions and extensions, without any compensation to be paid for said improvements, additions and extensions.” And lessor and lessee were corporations, the stockholders and directors of which were the same. The lessee built on the farm land a new and extensive brick plant at a cost of $770,000, with borrowed money, which was unpaid when it became a bankrupt. It carried such plants on its books as an asset.
Held: That, especially in view of the relations between the parties; such provisions of the lease could not be construed to give the lessor the right to hold such plant,, as against the creditors of the bankrupt, and that the latter’s trustee was’entitled to remove it as a trade fixture.
In construing the lease there involved the Circuit Court of Appeals said:
“That the burden is on the lessor to show a clear intent to except this- trade fixture plant from the general trade fixture rule. That rule is one favored by courts, since it not only tends to foster trade, .but enables land owners to rent their land with advantages for its use by others. ’ ’
Certainly no such clear intent is shown here. Because, instead of the lease expressly declaring that the lessee was not to have the right to remove the automatic fire sprinkler system, we find peculiar language employed which not only, as already pointed out, takes the article when affixed out of the description of things to be delivered up at the end of the term, but, further, indicates that the sprinkler system was intended to be installed for temporary uses only. . ;
It will be noticed that the special covenant employs the word equip, which in its ordinary acceptation means to fit up for. a particular sei-vice or exigency (Webster).
For ordinary purposes and for ordinary business uses, this-factory was complete and ready for use and enjoyment. . ■
*222 But the exigency for which this building was to be equipped was the extra hazardous business of the lessee, who, according to the lease, was to use said building'“as a wholesale liquor and rectifying house.”
The equipment, therefore, had in view temporary protection incident to extra hazardous occupancy.' It was a use contemplated during the occupancy of the building as a wholesale liquor and rectifying establishment, and therefore the equipment could not have been in any sense for the permanent .benefit of the freehold.
If, then, the rule laid down by the Circuit Court of Appeals, which is the latest utterance I can find on the subject; expresses the true ride- (and it is certainly in keeping with the spirit of the modern decisions), I am unable to hold, even though the landlord imposed the installation. of the system as a condition of the lease, that the lessor has shown a clear intent that this system, when constructed, was to be' excepted from the trade fixture rule. •
In my study of this perplexing question, I have come upon eases of the class to which belong Deane v. Hutchinson, 40 N. J. Eq., 83; Boyd v. Douglass, 72 Vt., 449, and others, where the principle is laid down, in substance, that where the lessor requires erections to be made, by a covenant in the lease, and which the lease gives no right to remove, the erection is not severable or removable.
But those cases, I think, are to be distinguished from the one before me, inasmuch as the thing to be done in those cases was unquestionably for the permanent benefit of the freehold, and unlike the case at bar, “the agreement of lease between the land’-' lord and tenant, neither by express Avords or by implication, reserved the right to the lessee to remove the erection”, (see lan-' guage of Van Fleet, Vice Chancellor, in Deane v. Hutchinson, .at page 87, supra). And by the very terms of the lease, the erection or building clearly became “an inseparable part of the freehold” (Ibid.) . - ....
In vieAAr of the foregoing considerations conceding nothing to the landlord “by implication,”' because.-“covenants ^restricting, or claiming to restrict the tenant’s ordinary right’to remove trade fixtures are always strictly construed and can not’be extended by implication’-’ (Montello Brick Company v. Trexler, *223 supra), and resolving all doubts favorably to the lessee, I hold 'that the lessor, by the lease itself, has not shown a clear intent to except' this automatic fire sprinkler system from the trade fixture rule, and that so far as the lease is concerned, not alone has the lessee not waived his privilege of removal, but by fair implication has had it reserved to him.
The question, therefore,- is-: does the sprinkler system in controversy here fall within the designation of a trade fixture ?
In determining whether'or not a given article is a trade fixture the intention of -annexation is a primary consideration. Price, J., in Silver v. Glass Company, 21 C. C., 284-287; Hill v. Senald, 53 Pa. St., 272; Hanrahan v. O’Reilly, 102 Mass., 201.
Examination of authorities will show that the intention referred to does not mean the tenant’s secret intention, but rather purely legal intention to be deduced from various external facts, such as mode of attachment to realty, the character of the article, and the purpose'for which it was put in place. It would be difficult, indeed, considering the duration of the term, to deduce an intention on the lessee’s part to make this system, equipped at a eost of $13,000] a permanent part of the freehold. Indeed, the analysis of the peculiar and guarded language of the lease compels a contrary deduction and indicates clearly -that neither party so intended, and that the parties had in contemplation temporary use only. It will be observed that the special covenant does not say that the lessee was to construct or erect or attach (words which might have been slightly stronger in favor of the landlord), but was to “equip” the building with a fire sprinkler system, which, as already pointed out, had reference to the temporary and hazardous occupancy by the lessee of the building as a wholesale liquor and rectifying house.
Merely because the landlord required this protection, because of the particular trade of the lessee, does not prove' that it was for the benefit solely of the building. See distinction drawn in Poole’s Case, 1 Salk., 377, 378, and noted in Wayne v. Railroad, 22 O. S., 563, and Case Manufacturing Company v. Gardin, 45 O. S., 289.
Incidentally, of course, the building would be benefited (protected) by an automatic fire sprinkler system, which would, in a measure, prevent combustion or fire from highly inflammable ■materials used in the prosecution of lessee’s business. And the *224 lessee, by protecting his business, and therefore the building, was in better position to pursue and enjoy his trade and industry. Conceding the sprinkler system was for the benefit of the building, it was for the benefit of the business, also, and we would then have what the authorities recognize as a "mixed case,” and it would still be within the beneficient provisions of the trade fixture rule. Lawton v. Lawton, 3 Atk., 13.
Nor is there anything in the mode of annexation that would indicate any intention on the lessee’s part to make a gift of this valuable article (valuable even if removed) to the landlord. On the contrary, the evidence shows conclusively that the entire system can be removed without material damage to the freehold, and, contrary to the landlord’s contention, without reducing it to a mass of crude materials. And even if this were not so,' there is respectable authority giving t-he right of removal, irrespective of the fact that the article may be destroyed in removing it. Van Ness v. Packard, 22 Peters, 137; Ferry Company v. O. & M. Railroad, 147 U. S., 396.
I have said that, as between landlord and tenant,' the authorities require very liberal construction in favor of the tenant; the object being to encourage trade and industry; in other words, the public good. Goodwin Law of Real Property, note, page 411; 2 Jones, Real Property,, Section 1665-6-8.
Indicative of the spirit pervading the modern decisions, we may take Moore v. Wood, 12 Abbott’s Practice (New York), 393, which was a case where a brick chimney was sunk three feet into the ground for the foundation, and not removable without being taken to pieces, and the court, in holding it removable, said:
‘ ‘ The rigor of the ancient law of fixtures has yielded, and must continue to yield, to the contingencies of modern times. Thé law must take notice of trade and manufacturers and their wants, and afford to them adequate and appropriate protection.”
.In view of all the foregoing, and prompted by the reasons' underlying the rule of liberal construction, I hold that the automatic fire sprinkler system here in controversy is a trade fixture and removable by the receivers as such.