## NEWCASTLE THEATRE COMPANY ET AL. *v.* WARD ET AL.

[No. 8,265. Filed March 13, 1914. Rehearing denied November 18, 1914. Transfer denied December 31, 1914.]

1. FIXTURES.—*Landlord and Tenant.*—A piano, picture machine, stage furniture and other articles of personal property placed in a theatre building by a lessee, and which are neither actually nor constructively attached to the building, are not fixtures and may be removed by the lessee. p. 477.

2. FIXTURES.—*Property of Tenant.*—Property of a tenant placed in a building may be in some manner attached thereto so as to be properly designated as fixtures. p. 477.

3. FIXTURES.—*Definition.*—In its most generally accepted meaning, the term fixtures is used to indicate articles of a chattel nature which have been actually or constructively annexed or attached to the real estate irrespective of the right of removal by the party by whom they were annexed. p. 478.

4.  FIXTURES.—*Right of Removal.—How Determined.*—Whether a fixture may be removed depends on whether there has been a real or constructive annexation of the article to the real estate, its appropriateness or adaptability to the use or purpose of that part of the realty to which it is connected, and the intention of the party with reference to making the article a permanent accession to the freehold.  p. 478.

5.  FIXTURES.—*Permanent Accession.—Intention.*—The relation sustained by the party to the real estate to which he has annexed an article is an important consideration in determining whether the annexation was made with the intention of making the article a permanent accession to the realty, and where the article is attached by the owner of the freehold an intention to make it a permanent accession to the real estate will be more readily inferred than in cases where the article is attached by a tenant for the uses and purposes of his trade or occupation.  p. 478.

6.  FIXTURES.—*Removal.—Landlord and Tenant.*—As between landlord and tenant, the general rule is that the tenant may remove trade fixtures within the term of his lease if they are capable of being detached without material injury to the freehold or themselves and of being set up and used elsewhere.  p. 479.

7.  FIXTURES.—*Removal.—Landlord and Tenant.*—The lessee of an opera house may remove as trade fixtures chairs and a steam heating plant placed in the building with the landlord's consent, where the only injury to the building resulting therefrom is the marks of screw holes where the chairs were attached, and holes in the floor where the steam pipes were attached to the radiators. p. 479.

8.  FIXTURES.—*Removal.—Landlord and Tenant.*—Where a lessee attempted to remove fixtures before the lease was terminated, but was prevented from doing so by a suit of the landlord to enjoin such removal, the right to thereafter remove same was not affected by a subsequent forfeiture of the lease.  p. 480.

9.  FIXTURES.—*Construction of Lease.—Right to Remove Fixtures.* —The provision in a lease for a room to be used as a theatre, and which was to be equipped by the lessee, to the effect that the property should be surrendered at the end of the term in as good condition and repair as when received, and in as good repair as it might be placed during the term, must be held to apply to the demised premises, and can not be construed as requiring the lessee to leave in the building trade fixtures installed therein by the lessee and which are no part of the demised real estate. p. 481.

10.  FIXTURES. — *Permanent   Accession. — Evidence.* — Testimony showing that the president of a theatre corporation, at the time of a discussion with the lessor on the question of security for the

rent under the lease of a building to be used for theatrical purposes, stated that the company was going to install four or five thousand dollars' worth of fixtures that would be ample security for the rent, since his company could never take them out, can not be construed as evidence of an agreement that the fixtures were to be treated as a part of the real estate, but was merely the expression of the president's opinion as to the legal rights of the company under the lease.    p. 481.

11.  LANDLORD AND TENANT.—*Lien for Rent.*—*Right to Hold Fixtures.*—The law does not give a landlord a lien on trade fixtures belonging to his tenant as security for rent.    p. 482.

From Henry Circuit Court; *Ed Jackson,* Judge.

Action by Andrew H. Ward and others against the Newcastle Theatre Company.  From a judgment for plaintiffs, and against certain interveners on their separate cross-complaints, this appeal is prosecuted.  *Reversed.*

*Robert S. Hunter* and *Philip Wilkinson,* for appellants.
*Forkner & Forkner,* for appellees.

LAIRY, C. J.—Appellees filed a complaint in the trial court against appellants praying for a temporary restraining order, and upon final hearing for a perpetual injunction preventing appellants from removing from the real estate owned by appellee, certain floors, heating plant, ticket office, stage, flies, drop curtains, scenery, dressing rooms, opera chairs and other appurtenances necessary to the operation of a theatre.  This was followed by a supplemental complaint asking that receiver be appointed to take charge of the property pending litigation.  Appellants, Gail Doolittle and Clara Arganbright, who held recorded chattel mortgages on the property in question, were granted permission to intervene and separate cross-complaints were filed by these parties against the Newcastle Theatre Company asking judgment on their notes and a foreclosure of their mortgages. Various pleadings were filed by the several parties to the action before the issues were closed, but as no question is made as to any of the pleadings we deem it unnecessary to set them out in detail.  There was a trial by the court and

a judgment rendered in favor of appellees on their complaint and against each of the cross-complainants Doolittle and Arganbright.

Each of appellants separately assign as error the action of the trial court in overruling their separate motions for a new trial. The motions are identical in form and the reasons assigned are that the decision of the court is not sustained by the evidence and is contrary to law.

It appears from the evidence that appellees were the owners of the real estate described in the complaint which included a large brick building. This building was fitted with a level floor, some balconies and a few chairs, and was used by appellees for a skating rink. On September 3, 1910, appellees executed a lease to the Crystal Amusement Company for the real estate described for the term of five years, beginning on October 1, 1910. The lease provided that the building was to be used by the lessee for a theatre, dance hall and for public gatherings, and that all contemplated repairs and alterations in the building were to be made by the lessee at its own expense and that all bills for such repairs were to be paid and the receipts therefor turned over to the lessors before the lessee was given full possession under its lease. The Crystal Amusement Company went into possession and made extensive repairs and alterations in the building under the terms of the lease. The floor was changed from a level to an inclined floor, a stage was built, and boxes and a balcony were placed in the building with a stairway leading to the balcony. The entire interior of the building was plastered and decorated and other changes and repairs of less importance were made. The cost of these changes and repairs was all paid for by the lessee as provided by the terms of the lease. After these repairs and changes were made so as to adapt the building for use as a theatre, the lessee purchased and placed in position a steam heating apparatus consisting of a boiler placed in the basement and connected by pipes with radiators so placed as to

furnish heat for the room used for theatre purposes. The lessee also purchased and placed in position on the floor of this room over 1,000 chairs for the purpose of seating audiences. It also purchased and placed in this room stage settings and scenery, stage furniture, a piano, a moving picture machine, carpets and other articles of personal property suitable for use in conducting a theatre. On November 3, 1910, the lessee with the written consent of the lessors, assigned the lease to the Newcastle Theatre Company. The latter company conducted a theatre in the leased building and paid the rent each month up to June 1, 1911. On May 25, 1911, the Newcastle Theatre Company started to remove the chairs and other property which it claimed, from the room and on the same day this action was brought by the lessors to restrain it from doing so. Upon the final hearing the court found that the lessor was the owner of all the property described in the complaint and cross-complaints and enjoined appellants from removing any of such property from the building.

The only question presented for decision is the sufficiency of the evidence to sustain this finding. The question thus presented requires us to decide whether, under the undisputed evidence, the property claimed by the Newcastle Theatre Company was personal property or whether it constituted a part of the real estate.

The evidence shows without dispute that the piano, picture machine, the stage furniture and some other articles of personal property were neither actually nor constructively attached to the building in any manner. The evidence does not show that these articles belong to that class of property which is on the border line between personal property and real estate and which is usually designated as fixtures. As to such property, the right of the tenant to remove it is clear. Some of the other property claimed by the tenant such as the opera chairs, the radiators, boiler and attachments used for heat-

ing purposes, and some parts of the scenery and stage settings are shown by the evidence to have been attached in some manner to the building and may be properly designated as fixtures.

The term "fixture" has been used in various senses. It is held to denote such articles of chattel nature, as, when once attached to the land can not be removed by the party annexing them as against the owner of the realty, while on the other hand it has been held to denote articles of a chattel nature affixed to real estate which retain their nature of personalty and which may be removed; but in its most generally accepted meaning, the term is used to indicate articles of a chattel nature which have been actually or constructively annexed or attached to the real estate irrespective of the right of removal by the party by whom they were annexed. Wherever the term is employed in this opinion it is used in the latter sense.

The question as to whether a fixture may be removed from real estate by the party who annexed it as against the owner of the freehold is to be determined by the application of several tests. These tests are stated by a leading authority on the subject as follows: "1st. Real or constructive annexation of the article in question to the realty. 2nd. Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected. 3rd. The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made." Ewell, Fixtures (2d ed.) *22. The relation which the party who makes the annexation sustains to the real estate exerts an important influence in determining whether the annexation was made with the intention of making the

article so attached a permanent accession to the real estate. Where an article is attached by the owner of the freehold and the question arises between him and a vendee, mortgagee or other person claiming a lien, the intention of making it a permanent accession to the real estate will be more readily inferred than in cases where the article has been annexed by a tenant for the uses and purposes of his trade or occupation during the continuance of the lease, and where the question as to the right of removal arises between him and his landlord. *Pea* v. *Pea* (1871), 35 Ind. 387; *Sparks* v. *State Bank* (1845), 7 Blackf. 469, 471; *White* v. *Cincinnati, etc., R. Co.* (1904), 34 Ind. App. 287, 71 N. E. 276. As between landlord and tenant, the

6. general rule is that the tenant may remove trade fixtures within the term of his lease if they are capable of being detached without material injury to the freehold or themselves and of being set up and used elsewhere. *Allen* v. *Kennedy* (1872), 40 Ind. 142; *Cromie* v. *Hoover* (1872), 40 Ind. 49; *Hedderich* v. *Smith* (1885), 103 Ind. 203, 2 N. E. 315, 53 Am. Rep. 509.

The evidence in this case shows without dispute that the chairs and the heating apparatus were placed in the leased room by the tenant with the consent of the landlord

7. for the purpose of enabling the tenant to conduct a theatre therein and that these articles can be removed without any appreciable injury to the building or to the articles themselves. The chairs were not made especially for this room, but were bought in the open market and were attached to the floor with screws which could be removed with no greater injury to the floor than the marks of the screw holes. The boiler was set in the basement underneath the stage and was not attached to the building except by the steam pipes which led from it to the radiators. These pipes were suspended from the joists of the basement by hangers and, at the places where they connected with the radiators, they passed through small holes in the floor. The entire

heating apparatus could be removed with no other injury to the building than the holes in the floor where the pipes had connected with the radiators. The law is reasonable and it will not regard an injury of such a trifling nature. *Martin* v. *Roe* (1857), 7 E. & B. 237; *Hanrahan* v. *O'Reilly* (1869), 102 Mass. 201. Appellees cite and rely upon certain cases in which chairs placed in theatres have been held to be irremovable fixtures. *New York Life Ins. Co.* v. *Allison* (1901), 107 Fed. 179, 46 C. C. A. 229; *Murray* v. *Bender* (1903), 125 Fed. 705, 63 L. R. A. 783; *Security Trust Co.* v. *Temple Trust Co.* (1904), 67 N. J. Eq. 514, 58 Atl. 865. An examination of the cases cited will show that the rights of a tenant to remove fixtures placed in the leased premises by him and used in connection with the business conducted therein, was not involved in any of them. In every case the seats were attached by the owner of the building and the question as to whether they constituted a part of the freehold or whether they retained their nature and characteristics as personal property arose as between the owner of the freehold and a grantee, mortgagee, lienholder or some other person occupying a like relation. These cases are therefore not in point. The lessee does not claim the right to remove the floor, the stage, boxes, balconies or anything else of a permanent nature which was constructed in making the changes contemplated so as to adapt the room for use as a theatre. The fixtures which it does seek to remove and which we have held it had a right to remove within the term of the lease, were bought and paid for by the tenant and were placed in the room for the sole purpose of enabling it to carry on its business therein.

At the time appellant undertook to remove the chairs from the room the term of its lease had not terminated; the rent was paid and no forfeiture of the lease had been

8.    declared. The fact that the lease may have been forfeited later for failure to pay rent does not affect the

rights of the lessee which it attempted to exercise during the term and before the forfeiture.

Appellee in argument attaches some importance to a provision of the lease to the effect that the property should be surrendered at the end of the term in as good condition and repair as when received, and in as good repair as it might be placed during the term. This provision must be held to apply to the demised premises and requires that they shall be surrendered in as good a state of repair as they may be placed in at any time during the term, but it does not require the tenant to leave in the building trade fixtures belonging to it and which are not a part of the demised real estate.

Our attention is called to the testimony of Andrew H. Ward, one of appellants, in relation to a conversation between him and a Mr. Harmon who was president of the Crystal Amusement Company, at a time when they were discussing the question of security for rent to become due under the lease, in which Harmon said: "Look here, Andy, we are going to put in there four or five thousand dollars' worth of fixtures. That is good for two or three years' rent. We can never take them out." It is argued on behalf of appellees that this constitutes some evidence of an agreement that the fixtures were to be treated as a part of the real estate. We do not think that the language can be so construed. It amounts to nothing more than the expression by Harmon of his opinion as to the legal rights of the company under its lease. The witness Ward testified as to some other statements made by Harmon which would seem to indicate that he was of the opinion that the company leasing the building would not have the legal right to remove the seats and the heating apparatus after they had been placed in the building. These opinions could not, however, affect the rights of either party to this controversy. The law does not give a landlord a

lien on trade fixtures belonging to his tenant as security for rent. If the landlord desires to secure such a lien, he may do so by taking a chattel mortgage, but he cannot hold removable trade fixtures of his tenant to secure himself against the loss of rent to become due under the lease.

The judgment is reversed with directions to grant a new trial.

NOTE.—Reported in 104 N. E. 526. As to what are fixtures, see 14 Am. Dec. 303; 17 Am. Dec. 686. As to when a tenant may remove fixtures, see 11 Am. Dec. 241; 64 L. R. A. 662. As to scope of provision that lessee shall leave alterations, improvements, additions, etc., on premises, see 42 L. R. A. (N. S.) 546. As to whether the right as between landlord and tenant to remove trade fixtures is conditional upon their susceptibility to removal without injury to themselves, see 18 L. R. A. (N. S.) 423; 7 L. Ed. U. S. 374. As to contracts involving theatre fixtures, see Ann. Cas. 1914 B 18. See, also, under (1) 19 Cyc. 1065, 1067; (2, 6, 7) 19 Cyc. 1065; (3) 19 Cyc. 1035; (4) 19 Cyc. 1036; (5) 19 Cyc. 1047; 1915 Ann. 1065-new; (8) 19 Cyc. 1067; (9) 19 Cyc. 1047; 1915 Ann. 1066-new; (10) 19 Cyc. 1048; (11) 19 Cyc. 1075.