William F. ROEBEL, Appellant–Plaintiff,

v.

John E. KOSSENYANS, d/b/a The Bagel Station and Bagatelle Bistro, Appellee–Defendant.

No. 02A05–9307–CV–265.

Court of Appeals of Indiana, Fifth District.

Feb. 9, 1994.

Rehearing Denied April 8, 1994.

Jack E. Roebel, Fort Wayne, for appellant-plaintiff.

Timothy J. Haffner, Robert D. Moreland, Baker & Daniels, Fort Wayne, for appellee-defendant.

SHARPNACK, Chief Judge.

William F. Roebel (Roebel) appeals from the denial of his motion to correct errors following a judgment in favor of the defendant, John E. Kossenyans (Kossenyans). Roebel raises two issues on appeal, which we restate as: (1) whether the trial court erred in finding that the incandescent "can" lighting Kossenyans removed from the leased premises upon termination of his lease were trade fixtures; and (2) whether the trial court erred in finding that their removal caused no damage to the premises. We affirm.

The facts most favorable to the judgment show that on or about March 20, 1987, Roebel and Kossenyans entered into a lease agreement with Roebel as landlord and Kossenyans as tenant. The lease agreement contained the following provision:

"TRADE FIXTURES. At the expiration of this Lease or any renewal thereof, provided Tenant is not in default hereunder, Tenant shall have the right to remove any

trade fixtures installed by Tenant on the Demised Premises, and Tenant shall repair any damage to the premises caused by such removal."

Kossenyans operated a restaurant in the leased premises. At the time Kossenyans leased the premises, the newly completed premises only consisted of blank white walls, fluorescent lights, and heat; there were no other improvements. The parties agreed that Kossenyans would take the premises "as is" and make all improvements at his expense. Among other things, Kossenyans purchased and installed recessed "can" incandescent lighting and dimmers. Roebel's rental agent, Stan Phillips, and Kossenyans, a ten-year veteran of the restaurant business, both testified that restaurants need some type of lighting other than fluorescent lighting to create an appropriate atmosphere in an "upscale" restaurant; for this reason, Kossenyans installed the can lighting. Kossanyens also installed a sink, faucets, a mop sink, and carpeting in the premises.

At the termination of his lease, on August 4, 1992, Kossenyans removed the sink, faucets, mop sink, and can lighting. The lighting was removed without doing any damage to the ceiling; removal of the lights left openings in the ceiling where they had been installed. Phillips inspected the premises on August 10, 1992 and, without mentioning the removal of the can lighting, found the premises to be in satisfactory condition.

After Kossenyans vacated the premises, Phillips hired an electrician to re-install can lighting into the ceiling openings left by Kossenyans' can lighting because the new tenant, who also was in the business of running an "upscale" restaurant, insisted on having can lighting. The electrician testified that there was nothing unusual about the can lighting within the structure and that many businesses use such lighting to create ambiance. The can lighting Kossenyans had removed was installed in his new restaurant.

On October 6, 1992, Roebel filed suit in the Small Claims Division of the Allen County Superior Court. Following a trial, the referee issued a judgment in favor of Kossenyans on January 27, 1993. On January 28, 1993, the referee's judgment was adopted as an order of the Allen Superior Court. On February 26, 1993, Roebel filed a motion to correct errors, which the trial court denied on March 13, 1993. On March 31, 1993, the referee's denial of the motion to correct errors was adopted as an order of the Allen Superior Court. This appeal followed.

■ Neither party requested special findings of fact and conclusions thereon under Ind. Trial Rule 52(A), but the trial court provided special findings of fact and conclusions thereon with its judgment. Roebel challenges these findings. The scope of review for special findings is well settled: The appellate court may not affirm the trial court's judgment on any ground which the evidence supports but must determine if the specific findings are adequate to support the trial court's decision. *Orkin Exterminating Company, Inc. v. Walters* (1984), Ind.App., 466 N.E.2d 55, 56, *trans. denied.*

■ When the trial court has entered special findings, we apply a two-tiered standard of review. First, we must determine whether the evidence supports the findings, and then, we must determine whether the findings support the judgment. Special findings will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *trans. denied.* "Clearly erroneous" means that, although there is evidence to support the trial court's decision, the record leaves the reviewing court with the firm conviction that a mistake has been committed. *Cox v. Cox* (1991), Ind.App., 580 N.E.2d 344, 348, *trans. denied.*

■ Roebel first argues that the trial court erred in finding that the incandescent can lighting were trade fixtures.

The trial court used the following definition of trade fixture:

"A trade fixture is defined under Indiana law as personal property put on the premises by the tenant which can be removed without substantial or permanent damage to the premises and is capable of being set up or used in business elsewhere."

Record, p. 10. This definition accurately reflects Indiana law. *See* 14 Indiana Legal Encyclopedia, *Fixtures* § 8 (1959); *Central Trust and Savings Co. v. Wallace* (1918), 66 Ind.App. 629, 118 N.E. 593, 594.

Both Roebel and Kossenyans cite *New Castle Theater Co. v. Ward* (1914), 57 Ind. App. 473, 104 N.E. 526 in their briefs. We find *New Castle* to be squarely on point in the instant case. In *New Castle,* the lessors owned a building which they leased to the Crystal Amusement Company. 104 N.E. at 526. The Crystal Amusement Company made extensive repairs and alterations at its own cost to the building to operate a theater therein. *Id.* at 527. Among other changes, the Crystal Amusement Company installed "a steam-heating apparatus consisting of a boiler placed in the basement, and connected by pipes with radiators to furnish heat for the room used for theater purposes . . . [and] over 1,000 chairs for the purpose of seating audiences." *Id.* Two months later, the Crystal Amusement Company assigned the lease, with the written consent of the lessors, to the New Castle Theater Company (New Castle). *Id.* Seven months later, New Castle began to remove the chairs and other property, which it claimed from the room containing the theater. *Id.* In response, the lessors filed suit and as a result, succeeded in preventing New Castle from removing the property. *Id.*

On appeal, New Castle asked this court to determine whether the property at issue was personal property or part of the real estate. This court employed a nearly identical standard for trade fixtures to that used by the trial court in the instant case to determine the tenant's right to remove trade fixtures at the termination of its lease:

> "As between landlord and tenant, the general rule is that the tenant may remove trade fixtures within the term of his lease, if they are capable of being detached without the material injury to the freehold or

themselves, and of being set up and used elsewhere."

*Id.* at 528.

The court reviewed the evidence and found that

> "The evidence in this case shows, without dispute, that the chairs and the heating apparatus were placed in the leased room by the tenant, with the consent of the landlord, for the purpose of enabling the tenant to conduct a theater therein, and that these articles can be removed without any appreciable injury to the building or to the articles themselves. The chairs were not made especially for this room, but were bought in the open market, and were attached to the floor with screws, which could be removed with no greater injury to the floor than the marks of the screw holes. The boiler was set in the basement underneath the stage, and was not attached to the building, except by the steam pipes which led from it to the radiators . . . The entire heating apparatus could be removed with no other injury to the building than the holes in the floor where the pipes had connected with the radiators."

\* \* \* \* \* \*

> "The fixtures which [New Castle] does seek to remove, and which we have held it had a right to remove within the term of the lease, were bought and paid for by the tenant, and were placed in the room for the sole purpose of enabling it to carry on its business therein."

*Id.* at 528. The evidence showed that the chairs and heating apparatus satisfied Indiana's standard for trade fixtures.

Like the chairs and heating apparatus in *New Castle,* we agree that Mr. Kossenyans' can lighting constituted trade fixtures. The evidence in the record shows that Kossenyans paid for and installed the can lighting he removed from the leased premises.[1] The

**1.** Roebel attempts to reargue the evidence by questioning whether Kossenyans paid for the can lighting. Roebel states that he reimbursed Kossenyans for the purchase of the improvements through rent abatements and therefore, Kossenyans arguably did not "put" the can lighting on the premises, as required by the trade fixture

standard that the trial court used. The trial court heard conflicting testimony regarding this matter from Kossenyans and Roebel's witness, Phillips. The lease shows that Kossenyans received a two-month rent abatement, but is silent as to the purpose of this abatement. Kossenyans testified that the abatements were not tied specif-

can lighting created softer lighting and ambiance in the restaurant. Kossenyans, who had been in the restaurant business for ten years, considered can lighting to be necessary to establish the proper ambiance in an "upscale" restaurant and knew of no "upscale" restaurant that did not use lighting other than can lighting to provide the proper ambiance. Both of Roebel's witnesses knew of no "upscale" restaurants that used lighting other than can lighting in their operations.

Kossenyans had the can lighting removed and the wires capped. Roebel re-installed can lighting in the holes left by Kossenyans. No other damage to the ceiling required repair. Kossenyans installed the can lighting in his new restaurant; using it in the same fashion as before.

Based on this evidence, we find that Kossenyans' can lighting met the definition of a trade fixture and therefore, we find that the trial court did not err. *See also Central Trust and Savings Co. v. Wallace, supra,* 118 N.E. at 594 (two window mirrors, one electric carbonator, one wall case thirty feet long, one soda fountain, front bar and fixtures, desk and partition, thirty feet shelving in rear room, one ice cream freezer, one ice crusher, one electric motor, belting, shafting, pulleys, etc. determined to be trade fixtures paid for and installed by the tenant); *Brown v. DuBois* (1988), Ohio Mun., 40 Ohio Misc.2d 18, 532 N.E.2d 223 (track lighting appliances installed by tenant and intended to be removed, deemed trade fixtures).

 Roebel next argues that if the can lighting fixtures were trade fixtures, then the trial court erred in finding that their removal caused no damage to the premises. We disagree. The trial court was not required to find the absence of all damage upon the removal of the can lighting. Rather, the trial court was required to find and did find, consistent with Indiana law and its standard for trade fixture, that removal of the can lighting did not cause "substantial or permanent damage" to the premises. *See* 14

Ind.Legal Encyclopedia § 8, *supra.* The evidence in the record supports the trial court's finding that removal of the lighting fixtures did not cause any substantial or permanent damage to the ceiling. The removal of the lighting was completed by professional electricians who only left vacant holes in the ceiling. Roebel's own electrician testified that he installed new can lighting into the vacant holes and that other than those holes, there was no damage to the ceiling of the premises. We therefore find no error.

For the reasons stated above, we affirm the judgment of the trial court.

AFFIRMED.

BAKER and BARTEAU, JJ., concur.

---

ically to any improvements to the premises, but rather were products of negotiations between the parties. On the other hand, Phillips testified that the abatements, including a per-square-foot rent reduction, were intended to compensate Kossenyans for the improvements to the premises. We find that the trial court could reasonably have inferred from this evidence that the abatements were not tied to the improvements. Therefore, we find no error here.