## White *v.* Cincinnati, Richmond & Muncie Railroad et al.

[No. 4,642.   Filed June 7, 1904.   Rehearing denied October 12, 1904. Transfer denied December 14, 1904.]

1. APPEAL AND ERROR.—*Bill of Exceptions.*—*Real Evidence.*—*Exhibit.*—Where a number of samples of paper were attached together and referred to on the examination of witnesses during the trial as an exhibit, and these were placed in the hands of such witnesses and they were asked to state the character and quality of such paper as to its salable, marketable and merchantable qualities, but such samples were not introduced in evidence, such samples are not part of the evidence in such cause, and not necessary in the bill of exceptions. p. 288.

2. SAME.—*Bill of Exceptions.*—*Maps.*—Where maps were introduced in evidence and witnesses were permitted to indicate their meaning by reference thereto, without using any apt language showing the location of the things testified about, while not a commendable practice, yet, where from a study thereof the real meaning may be understood, such evidence constitutes a part of the record. p. 289.

3. EMINENT DOMAIN.—*"Land."*—*Meaning of Term.*—*Buildings.*—*Removal.*—"Land," as used in statutes conferring power to condemn, includes the soil and also buildings and other structures attached thereto, and all interests therein, and such buildings and other structures must be paid for, the cost of removing same forming no part of the damages to be assessed to the owner. p. 291.

4. SAME.—*Injury to Land Not Taken.*—Where a part of a tract of land is taken under condemnation proceedings by a railroad company, the owner is entitled to the value of such land, together with any injury to the remainder of the land caused by such taking and the construction and operation of the railroad. p. 291.

5. FIXTURES.—*Machinery in Paper-Mill.*—*Intention of Party.*—Where a person puts machinery into a paper-mill on his land with the intention that it shall remain there, and which is essential to the use he makes of such land, such machinery is a fixture and goes with such land on an ordinary conveyance of such premises. p. 292.

6. EMINENT DOMAIN.—*Damage.*—*Rules for Assessing in Regard to Fixtures.*—Where machinery is attached to the real estate, actually or constructively, with the intention of its remaining there permanently, the owner is entitled to its value in condemnation proceedings, and the owner can not be compelled to retain it and receive simply the value of the lands without such machinery. p. 293.

7. SAME.—*Condemning a Part of a Paper-Mill.*—*Measure of Damage.*—Where a part of a paper-mill lot is sought to be condemned, the

measure of damages is not only the value of the portion of the lot appropriated with the value of that part of the building thereon situate and the fixtures thereon, but also the injury done to such paper-mill as a whole, its value being largely as a unit, the damage being ascertained by the difference in value of the mill before and after the appropriation.   p. 293.

From Wayne Circuit Court, *H. C. Fox,* Judge.

Action by the Cincinnati, Richmond & Muncie Railroad and another against Louisa H. White for the condemnation of land. From a judgment in favor of defendant for less than she claimed, she appeals. *Reversed.*

*Thomas J. Study* and *John L. Rupe,* for appellant.
*Robbins & Starr,* for appellees.

ROBINSON, J.—This was a proceeding by appellee for the appropriation of a right of way over and across certain described real estate. Upon the real estate, situated between the high banks of the Whitewater river, is located a paper-mill, consisting of several brick buildings, containing engines, boilers, and various kinds of machinery used in the manufacture of paper. The railroad crosses the river on an iron bridge extending from the top of the bank on one side to the top of the bank on the other, and supported by piers in the bed of the stream, some of which piers are on appellant's land. The bridge passes above and over the end of the mill buildings, and within a short distance of the other buildings. To the award of the appraisers assessing damages in appellant's favor she filed exceptions. Upon the trial the jury returned a verdict in her favor. Overruling her motion for a new trial is the only error assigned.

1.   Counsel for appellee insist that the evidence is not in the record, and that, without the evidence, no question is presented. A number of samples of paper, manufactured at this paper-mill, were attached together, and referred to as exhibit A. This exhibit was placed in the hands of a witness while testifying, who was asked to state, from the samples, what the character and quality of the paper was

as to its salable, merchantable and marketable qualities. The exhibit was not introduced in evidence. The object of this evidence was to show that this particular mill was capable of producing a salable and marketable product, and the evidence went only to the value of the mill. Without the exhibit, the testimony of the witness shows that the mill produced a salable and marketable paper. The sample itself would not necessarily add anything to the testimony the witness gave. The value of certain paper, of which the exhibit was a sample, was not in question. The presence of this exhibit is not at all necessary to a full understanding of what the witness said. It is not necessary in any case to introduce in evidence an object or article which may be completely and accurately described by parol proof. If oral testimony may be as readily understood without the thing itself as with it, it has no proper place in the record. It may have aided the witness in giving his testimony, but it aided him in answering the questions asked in the same way that the jury in this case was aided in reaching a verdict by an inspection of the location of the mill. What the jury saw was not evidence, but they were permitted to view the premises that they might the better understand the testimony of the witnesses.

2. It is further claimed that the evidence is not in the record because many witnesses, while being examined, were permitted to indicate their meaning by reference to maps, without any apt language showing the location on the map of the things testified about. Two maps were introduced in evidence, showing the relative size and location of the different buildings, the rooms in which the principal machinery is located, the location of the railroad bridge with reference to the mill, and the manner of the construction of the bridge across the river. A photograph of the mill was also introduced in evidence. It is clear that, in the examination of many of the witnesses, they had these maps

before them, and in some instances it is not possible to tell to what part of the map the witness referred while testifying. While we can not at all commend the method adopted in this case in the examination of the witnesses in connection with these maps, yet, disregarding some immaterial matters about which witnesses were thus examined, so far as the material evidence in the case is concerned, from a study of the maps and photograph, in connection with this oral testimony, we can understand what the witnesses really meant.

By the instrument of appropriation the company proposed to appropriate "a strip of land twenty-five feet in width on each side of the center line" of the road, upon the conditions (a) that the company should erect and maintain a bridge over and along the real estate; (b) that no building on the land, or any part thereof, should be removed or destroyed; (c) that at such places as there were buildings or structures the bridge should pass over and above them at a height of not less than eight feet above the same; (d) that the bridge, at all points of its crossing over and above buildings, should be properly protected by means of sheet iron, in order to prevent the falling of cinders through the bridge.

Appellant's land, over a part of which the bridge extends, consists of about ten and a half acres, upon which is located a number of buildings, containing engines, boilers and machinery, the buildings and machinery comprising a mill for the manufacture of paper. A part of the power for operating the mill is furnished by water brought through a raceway from the dam above the mill. In the mill are six boilers, each sixteen feet long and sixty to seventy-two inches in diameter, each on a separate brick foundation made specially for the purpose, three engines, eighteen, eighty and three hundred horse-power; refining engines and suction pumps; a rotary boiler sixteen feet long and seven feet in

diameter, with pipes leading from the steam boilers; beaters placed upon a floor of heavy timbers resting upon a separate stone foundation; stuff chests; a "Fourdenier machine" weighing forty to fifty tons, set on a separate stone and cement foundation about four feet deep, bolted to sills which are fastened on top of this foundation by bolts running down into the foundation; a cylinder machine attached to sills resting on stone piers; steam pipes and line shafting; and other appliances necessary in the manufacture of paper—the whole constituting a paper-mill.

3. The statute provides that the corporation shall deposit with the clerk of the court of the county "where the land lies, a description of the rights and interests intended to be appropriated; and such land, rights and interests shall belong to such company, to use for the purpose specified, by making or tendering payment" as specified. §5160 Burns 1901, §3907 R. S. 1881. "The term land," says the author in Lewis, Eminent Domain (2d ed.), §285, "in statutes conferring power to condemn, is to be taken in its legal sense, and includes both the soil and buildings and other structures on it, and any and all interests therein." It is accordingly held that when there are buildings on the land they must be paid for as part of the realty, and the cost of their removal forms no part of the damages to be assessed to the landowner. *LaFayette, etc., R. Co.* v. *Winslow* (1872), 66 Ill. 219; *Chicago, etc., R. Co.* v. *Knuffke* (1887), 36 Kan. 367; *Mississippi River Bridge Co.* v. *Ring* (1874), 58 Mo. 491; *Finn* v. *Providence Gas, etc., Co.* (1882), 99 Pa. St. 631; Mills, Eminent Domain, §§49, 223; *Schuchardt* v. *Mayor, etc.* (1873), 53 N. Y. 202.

4. Where a part of a tract of land is taken, the owner is entitled to the value of the land actually appropriated and any injury to the residue of the land naturally resulting from the appropriation and the construction and operation of the road thereon. *Whitewater, etc., R. Co.* v. *McClure*

(1868), 29 Ind. 536; *Montmorency Gravel Road Co.* v. *Stockton* (1873), 43 Ind. 328; *Baltimore, etc., R. Co.* v. *Lansing* (1875), 52 Ind. 229.

5.   In a part of one of the instructions the jury were told that if "there was machinery in such buildings, and attached thereto, and intended to be permanently used in connection therewith, and was attached in such a manner that it could not be detached and removed without material injury to such real estate or buildings, then such machinery became and was a part of the real estate to which it was so attached. This is a matter for the jury to determine from the evidence." We do not think this correctly states the law relating to fixtures.   It is true, as stated in appellee's brief, the undisputed evidence is that all the machinery had some manner of attachment.   But the instruction states that the manner of attachment must be such that the machinery could not be detached and removed without material injury to the real estate or buildings.   The jury had been told in the same instruction that buildings erected upon and attached to land as permanent structures will become a part of the freehold.   The instruction makes of first, if not of controlling, importance, the fact of annexation of the machinery to the buildings, and in such a manner that it could not be detached and removed without material injury to such real estate or buildings.   By the common law rule, whatever was annexed to the freehold became, in legal contemplation, a part of it.   But, while it is difficult to formulate any general rule, generally speaking, whatever the owner puts upon the land with the intention that it should remain upon the land, and is essential to the use which he makes of it, goes with the land upon a sale.   "The united application of three requisites," said the court in *Binkley* v. *Forkner* (1888), 117 Ind. 176, 3 L. R. A. 33, "is regarded as the true criterion of an immovable fixture:   (1) Real or constructive annexation of the article in question to the freehold.   (2) Appropriation or adaptation to the

use or purpose of that part of the realty with which it is connected. (3) The intention of the party making the annexation to make the article a permanent accession to the freehold." The machinery, having been placed in the buildings by the owner to enable him to use to a better advantage his own land, and being essential for the purpose for which the land was used, so far as the owner is concerned, would be regarded as a fixture in an ordinary conveyance or mortgage of the land by him. See *Dutton* v. *Ensley* (1898), 21 Ind. App. 46, 69 Am. St. 340; *McFarlane* v. *Foley* (1901), 27 Ind. App. 484, 87 Am. St. 264; *Voorhis* v. *Freeman* (1841), 2 Watts & Serg. 116, 37 Am. Dec. 490; *Ottumwa Woolen Mills Co.* v. *Hawley* (1876), 44 Iowa 57, 24 Am. Rep. 719; *McConnell* v. *Blood* (1877), 123 Mass. 47, 25 Am. Rep. 12; *Sparks* v. *State Bank* (1845), 7 Blackf. 469; *Hill* v. *National Bank* (1878), 97 U. S. 450, 24 L. Ed. 1051.

6. In *Matter of Mayor, etc.* (1899), 39 Hun, App. Div., 589, it is said that "The same rule exists in proceedings to take land under the right of eminent domain, and the commissioners of estimate have no right to restrict the assessment to the simple value of the land, compelling the owner to retain the fixtures on the premises, and exempting the city from an obligation to take and pay for them as a part of the land."

7. The case at bar seems to have been tried upon the theory that a part of this machinery should be considered a part of the land, while a part of the machinery might not be so considered. It is clear from the record that the improvement upon the real estate consists, not simply of certain buildings containing various pieces of machinery, but of a paper-mill—a thing complete within itself. Such machinery as is necessary and essential to a paper-mill plant would be without value except as a part of a paper-mill. Means were provided for utilizing the water-power, buildings erected, and the machinery placed in position for the

purpose of establishing a paper-mill. It is not questioned that the buildings should be regarded as a part of the land. In such case there is no more reason for saying that the machinery necessary and essential for carrying out the purpose of the mill is a mere incident or accessory to the buildings than there is for saying that the buildings are incidents or accessories to the machinery. One machine essential in the manufacture of paper might be so annexed to or constitute such part of a building that it could not be removed, and another machine equally essential might be easily removed, and yet, when the two machines are separated, each is without value for the uses intended. In such case both of the machines should be considered as attached to the freehold—one by real, and the other by constructive annexation. As the machinery is permanent in its character, and, being essential to the purpose for which the buildings are used, is a fixture, it must be regarded as realty, and go with the buildings. The land, water-power, buildings and machinery constitute a paper-mill plant—a unit. It has or has not a value as such, just as a building is valued, not by fixing a value on the different materials composing it, but as a building. By the instrument of appropriation no building situated on the real estate is to be removed or destroyed, but it is proposed to pass over a part of the mill by means of a bridge. If a part of the land is taken, appellant is entitled to the fair market value of the land so taken. And if the market value of the remaining portion with the improvement as above indicated—that is, the market value of the paper-mill plant—after the appropriation is less than it was before the appropriation, she is entitled to that difference. Just compensation, and that only, is all appellant has a right to demand, and that should be made to her. See *Matter of Mayor, etc., supra; Green* v. *Phillips* (1875), 67 Va. 752, 21 Am. Rep. 323; *Hill* v. *National Bank, supra; Taylor* v. *Collins* (1881), 51 Wis. 123, 8 N. W. 22; *Parsons* v. *Copeland* (1854), 38 Me. 537; *Hopewell*

*Mills.* v. *Taunton Sav. Bank* (1890), 150 Mass. 519, 23 N. E. 327, 6 L. R. A. 249, 15 Am. St. 235; *Voorhis* v. *Freeman, supra.*

The motion for a new trial should have been sustained. Judgment reversed.