## MORNINGSTAR v JONES

Ohio Appeals, 3rd Dist, Allen Co.

No. 778. Decided March 6, 1940

Everett, Everett & Blair, Lima, for plaintiff-appellee.

Wheeler, Bentley, Neville & Cory, Lima, for defendant-appellant.

## OPINION

By GUERNSEY, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Allen County, in an action pending therein wherein the appellee, Maurine Morningstar was plaintiff, and the appellant, Dr. G. E. Jones was defendant.

The action was filed in the Common Pleas Court of Allen County on June 23, 1938, and is one for damages for alleged malpractice. It was tried on the issues raised by the amended petition of the plaintiff, answer of the defendant thereto, and the reply of the plaintiff to the answer.

Upon the trial the jury returned a verdict in favor of the plaintiff in the sum of $11,182.35.

With the general verdict, the jury, in answer to interrogatories submitted to them by the defendant, returned findings of fact as follows:

1. Upon what date did the relationship of physician and patient between the plaintiff, Maurine Morningstar, and the defendant Dr. G. E. Jones, cease as to her treatment by the defendant for obesity?

A. Upon the 3rd day of August, 1937.

2. Upon what date did the plaintiff, Maurine Morningstar, last consult with the defendant, Dr. G. E. Jones, as her physician relative to her obesity?

A. Upon the 3rd day of August, 1937.

3. When did the relationship of patient and physician between Maurine Morningstar and Dr. G. E. Jones end?

A. Upon the 3rd day of August, 1937.

These findings of fact were concurred in and signed by nine of the jurors.

A motion for a new trial and a motion for judgment notwithstanding the verdict were filed by the defendant, which motions were overruled, and judgment was then entered on the verdict. It is from this judgment this appeal is taken.

The allegations of the amended petition are as follows:

"That the defendant, Dr. G. E. Jones, is and for many years last past has been a physician and surgeon practicing as such in the City of Lima, Allen County, Ohio.

"That on or about the 15th day of April, 1936, the said plaintiff at the special instance and request of the defendant, Dr. G. E. Jones, employed and retained the said defendant for a reasonable fee to be paid therefor as such physician and surgeon for professional treatment to effect a reduction in her body weight;

"That said defendant carelessly, negligently and unskillfully gave, furnished, prescribed, and supplied plaintiff with a certain harmful, poisonous, dangerous and unofficial drug which said defendant represented to be harmless

and entirely safe and that said defendant knew or ought to have known said drug to be harmful, poisonous, dangerous and unofficial;

"That said plaintiff took and administered to herself said harmful, poisonous, dangerous and unofficial drug under the direction and orders of the defendant not knowing it to be harmful, poisonous, dangerous or unofficial.

"That after having taken said harmful, poisonous, dangerous and unofficial drug for several weeks, said plaintiff complained to the defendant that she was experiencing numbness in her lower extremeties, a high fever and a feeling of great debility and that said defendant carelessly, negligently and unskillfully directed, ordered and prescribed that plaintiff continue the use of said harmful, poisonous, dangerous and unofficial drug and that said plaintiff relying upon the advice of the defendant did continue the use of said drug.

"That as the direct and proximate result of the defendant's careless, negligent, and unskillful prescription and treatment cataracts developed in both of plaintiff's eyes and destroyed her vision and that eight operations were performed in an attempt to effect a cure and to restore normal vision.

"That said defendant negligently, carelessly and unskillfully on numerous occasions and especially on or about August 9, 1937 refused and neglected to inform the eye specialist who performed the several operations aforesaid, although often requested to do so, as to the name of the drug that he had prescribed, supplied and administered to effect a reduction in plaintiff's bodily weight and as the direct and proximate cause of said failure, the said eye specialist was unable to give adequate and timely treatment to the great damage of this plaintiff as aforesaid.

"Plaintiff further says that she frequently consulted with said defendant relative to her condition aforesaid and especially on August 3, 1937, and was advised not to worry about her condition or the treatment being given and that she relied upon said advise until the filing of this action.

"Plaintiff further says that she has been put to great expense to wit: the sum of $1118.06 in and about endeavoring to restore and improve her vision and that her vision is still impaired, damaged and destroyed whereby plaintiff has been greatly and permanently injured, that she is rendered unfit and unable to perform her usual duties as a house wife, that she has experienced great physical and mental pain and suffering to the damage of said plaintiff in the sum of $50,000.00."

The answer of the defendant thereto, is as follows:

"Now comes the defendant, Dr. G. E Jones, and for his answer to the amended petition of the plaintiff herein says that he admits that he is and for many years last past has been a practicing physician and surgeon in the city of Lima, Allen County, Ohio; admits that on or about the 15th day of April, 1936, he entered into a relationship of physician and patient with the plaintiff herein, Maurine Morningstar.

"For further answer this defendant absolutely and specifically denies each and every, all and singular the other allegations and averments in said amended petition of the plaintiff contained.

"Second Defense.

For a second and further defense herein this defendant, Dr. G. E. Jones, hereby adopts and reavers all the allegations of his foregoing first defense as though herein fully set forth and rewritten and says that this action was commenced in the Common Pleas Court of Allen County, Ohio, more than one year after his relationship with the plaintiff as physician and surgeon had terminated.

"Wherefore, having fully answered, this defendant prays that he may go hence with his costs."

The reply of the plaintiff to the answer is in substance a general denial

of the new matter pleaded in the answer.

The record in the case is so long and involved that it is impracticable to give a detailed statement of the facts, so at this point we will only make a statement of the ultimate facts in evidence, some of the conflicts in evidence, and some of the details necessary to an understanding of the case as presented, and will discuss some of the details and some of the conflicts in connection with the various assignments of error based thereon.

The plaintiff, on or about the 15th day of April, 1936, employed and retained the defendant, Dr. G. E. Jones, in the capacity of physician and surgeon to administer to her professional treatment comprehending the taking internally by her of drugs to effect a reduction in her body weight. Such employment contemplated the payment by plaintiff to defendant of a reasonable fee, which was afterwards paid.

At the time such employment was entered into and as one of the terms thereof the defendant represented to plaintiff that the drug which he proposed she would take internally in the course of such treatment was harmless and entirely safe. The fact that he made this representation to the plaintiff is admitted by the defendant.

Pursuant to the employment, and between April 6, 1936, and the week of June 29, 1936, the defendant gave, furnished, prescribed and supplied the plaintiff with certain drugs in the form of pills yellow in color and identical in size and contents.

The plaintiff, as a part of the treatment prescribed by the defendant, during the period mentioned took and administered internally to herself the pills in accordance with the directions of the defendant, not knowing them to be harmful, poisonous, dangerous or unofficial.

During this period the plaintiff had symptoms of excessive sweating, numbness and pain in the joints, and other manifestations of physical disorder, of which she from time to time informed the defendant and he advised her not to worry; and during the latter part of the period the sweating became so great that the plaintiff asked defendant to be allowed to discontinue the taking of the pills until her symptoms should improve.

Plaintiff's weight was reduced from one hundred and seventy-six pounds plus, on April 15, 1936, to one hundred and forty-eight pounds on June 29, 1936, and on or about the last mentioned date the plaintiff ceased to take any pills of the character mentioned. Subsequent to June 29, 1936, plaintiff's weight became further reduced and she continued to suffer pain, and her health became further impaired, and pain developed in her eyes. and at intervals of approximately once a week from this date until August 3, 1937, she called upon the defendant at his office, mainly in the evenings, for the purpose of treatment of her physical condition.

The defendant on a number of occasions during this period examined her and prescribed physics, and upon a number of occasions upon her informing him of the pain in her eyes, examined her eyes and each time advised her that there was nothing wrong with her.

During the month of July, 1937, he advised her to call on a dentist for treatment of her teeth, which she did accordingly.

On or about February 10, 1937, the plaintiff sustained injuries in an automobile accident, for which the defendant treated her. This treatment continued from February 16, 1937, until March 3, 1937.

Entries appear in the account books of the defendant showing the nature of the treatment of the injuries sustained by plaintiff in the automobile accident, and the items of charges therefor. From these entries and receipts in evidence, under date of August 3, 1937 it appears that these charges were paid by check on August 3, 1937.

While entries were made in the account books of the defendant, of the treatment given plaintiff between April 15 and June 29, 1936, no charge or credit items appear in the sheets from

the defendant's account books offered in evidence. The defendant in his testimony admits the receipt of $14.85 from the plaintiff as payment for the treatments. The plaintiff in her testimony states that she paid for the treatments between the dates of April 15 and June 29, 1936, as well as the treatments subsequent thereto, except the treatment of the injuries sustained by her in the automobile accident, in cash in small installments from time to time when she called at the office of defendant for treatment. No entries appear in the books of account of the defendant as to treatments administered by him to the plaintiff. except the entries above mentioned, showing treatment between April 15 and June 29, 1936, and treatment of injuries sustained in the automobile accident, between February 16 and March 3, 1937.

After the plaintiff had ceased the taking of the pills prescribed in the treatment given between April 15 and June 29, 1936, there were a number of pills left in her possession one of which she gave to a chemist for analysis and which on being analyzed by the chemist was found to be a yellow centered pill containing one and one-half grains of sodium alpha dinitrophenol, sodium dinitrophenol being a yellow salt which is sometimes used as a dye and is produced by combining carbolic acid and nitric acid. Dinitrophenol is an unofficial drug and has not been approved by the American Medical Association for listing in the pharmacapoeia.

On July 21st, 1937, the pain in her eyes becoming more sore the plaintiff engaged the services of a specialist to treat her eyes and after a number of examinations and treatments the specialist determined that she had toxic cataracts caused by some poison in the blood.

Shortly following August 3, 1937, the cataracts had developed to such an extent that operations were necessary for their removal which operations were performed by the eye specialist. The operations were several in number, performed at different times, and were very painful.

Since removal of the cataracts plaintiff cannot get around as she formerly could to do her housework and other household duties and without her glasses can only distinguish between light and darkness.

For medical, surgical and hospital services in connection with said cataracts plaintiff has contracted indebtedness in the sum of $1182.35.

The defendant admitted on cross-examination that he had administered to Anna Zada Squire, Dorris Hughes, Maud Miller and Lucille Wyre, the same kind of pills he had given to Maurine Morningstar in his treatment of her commencing April 15, 1936.

These persons were called as witnesses on behalf of plaintiff, but objections of the defendant to questions asked them were sustained by the court. Proffers of proof were made by the plaintiff to the effect that if these witnesses had been permitted to answer the questions they would have testified that the pills given them by the defendant were yellow centered and contained dinitrophenol, and that following the taking of the pills each of them developed cataracts.

The plaintiff, some twenty years ago as a young girl, had trouble with her eyes attributable to hereditary syphillis, but the toxic cataracts which plaintiff developed were not attributable to syphilis.

There was a causal connection between the administration of dinitrophenol and the development of cataracts. The most probable cause of the development of cataracts by plaintiff was the administration to her of dinitrophenol.

The usual ordinary and approved methods used by the ordinary practioner in Lima and vicinity for effecting reduction in body weight, in the months of April, May and June, 1936, was limiting diet and administering thyroid extracts. In case of the administration of thyroid if symptoms of severe sweating and numbness developed the administration would have been discontinued or the amount cut down.

The defendant denied the administration of pills containing dinitrophenol to plaintiff and testified the pills he administered to plaintiff were dark centered thyroid pills sold under the name of metacrine, and purchased by him from a reputable drug house, and that such treatment terminated on June 29, 1936, and that he gave the plaintiff no treatment of any character subsequent thereto except treatment for the injuries sustained by her in automobile accident and that this treatment continued only from February 16 to March 3, 1937, and that the plaintiff did not call upon him at his office nor did he treat her at any time except between April 15 and June 29, 1936, and between February 16 and March 3, 1937.

The defendant assigns error in the following particulars:

1. That the evidence and the record in this cause and the greater weight thereof conclusively show that appellee's action is barred by the statute of limitations.

2. That there is total failure of proof on the part of appellee disclosed by the record of any actionable right against the appellant.

3. That the verdict and judgment are against the weight of the evidence and are excessive and the result of passion and prejudice on the part of the jury.

4. That there was misconduct of the appellee and her counsel in the court below in placing on the witness stand other patients of the appellant alleged to have taken the same medicine as given by the appellant to appellee and who appeared in court in dark glasses thus indicating trouble with their eyes and who were led to the witness stand by counsel for the appellee and placed thereon in a manner to create the impression in the minds of the jury that said proposed witnesses were blind, counsel knowing that such action was incompetent, improper and unlawful and knowing that the evidence to be elicited from such witnesses was improper, irrelevant and unlawful.

5. That the court erred in permitting appellee and her counsel to produce in evidence in the court below and place on the witness stand other patients of the appellant alleged to have taken the same medicine as given to appellee by appellant and who were placed on the witness stand in dark glasses indicating trouble with their eyes and who apparently had to be helped to and from the witness stand by counsel for the appellee because of a condition of blindness.

6. That the court erred in not sustaining the motion of the appellant for a directed verdict at the close of plaintiff's case in chief and further erred in not sustaining said motion for a directed verdict at the close of all the evidence in the case.

7. That the special findings of fact made by the jury in the court below at the request of the appellant are against the manifest weight of the evidence and are not sustained by any sufficient evidence.

8. That the court below erred in permitting the introduction of evidence in behalf of the appellee to which objection was made at the time and further erred in not permitting evidence offered by the appellant.

These assignments will be considered in the order mentioned.

1. The first assignment of error involves the second defense in the defendant's answer in which he pleaded that the cause was commenced in the Common Pleas Court of Allen County, Ohio, more than one year after his relationship of physician and surgeon to the plaintiff had terminated.

The statute of limitations applicable to actions for malpractice is §11225 GC, which reads as follows:

"One year. An action for libel, slander, assault, battery, malicious prosecution, false imprisonment or malpractice, or upon a statute for a penalty or forfeiture, shall be brought within one year after the cause thereof accrued."

In the last expression of the Supreme Court on the subject of the time the

statute begins to run, it is held that the relation of surgeon and patient is one arising on contract, express or implied, and that in an action for a breach of the contract in such case the statute does not begin to run until the contract relation is terminated. **Bowers v Santee, 99 Oh St 361.**

The defendant in his second defense had adopted this expression of the Supreme Court as the determinative test of the time the cause of action in the instant case accrued and the statute began to run.

The general rule applicable to the duration and termination of the employment of a physician and surgeon, is stated in 48 C. J. at page 1112, as follows:

"Unless the terms of employment, or notice, limit the services to be given, the relation of physician and patient, and the physician's employment, continue until the physician's services are no longer needed, or until terminated by common or mutual consent or at the will of either party."

However, the latter part of the above rule is limited by the decisions of the courts of Ohio, to the effect that although a patient may, in the absence of an agreement to the contrary, discharge a physician at any time, before a physician or surgeon can withdraw from the case, it is necessary for him to give reasonable notice to the patient in order that another physician may be procured, the character of the services of the physician and his relation to the patient being such that he is not permitted under the law arbitrarily to quit the services at any time without any cause, and leave his patient without medical attendance. **31 O. Jur. 452.**

Upon the issue raised by the defendant's plea of the statute of limitations and plaintiff's reply thereto, the burden was upon the defendant to prove by a preponderance of the evidence that the termination of the relationship of physician and surgeon occurred at some time prior to the date June 23,

1938, the date the action was commenced.

Upon this issue, on the one hand is the direct positive testimony of the plaintiff and her husband that following the administration of the pills comprehended in the treatment given between April 15 and June 29, 1936, the health of the plaintiff became impaired and continued to be impaired until after August 3, 1937, when the relationship, as charged in the petition, terminated, and that during all this period the plaintiff called on defendant at his office, mainly in the evenings, at intervals of approximately one a week for the purpose of securing his professional advice and treatment of her condition; and that during these calls the defendant examined and prescribed for her, and on one occasion sent her to a dentist for treatment. There is also the positive and direct testimony of the plaintiff and her husband that of the pills which were left in her possession after she had ceased to take them, she gave one to a chemist for analysis; and there is the positive direct testimony of the chemist that the pill so furnished to him was analyzed by him and found to contain dinitrophenol.

From the testimony of the plaintiff and her husband as to her symptoms during and following the administration of the pills, and the testimony of a medical expert as to her physical condition prior to the operations for cataracts, and the causal connection between her impaired physical condition and the taking of dinitrophenol pills by her, an inference may be properly drawn that her physical condition following the treatment mentioned, was impaired and the impairment attributable to the taking of the pills.

On the other hand there is the direct positive testimony of the defendant that the pills were thyroid pills and did not contain dinitrophenol, and that plaintiff did not call on him at his office and that he did not treat her in connection with the taking of said pills or conditions resulting therefrom, subsequent to June 29, 1936.

The testimony of the defendant with reference to the termination of the treatment which commenced April 15, 1936, is partially corroborated by the testimony of three young women who at various times between April 15, 1936, and August 3, 1937, had been employed by him to keep his books of account and made the entries in his account books during said time. The testimony of these three witnesses, by them based mainly on the entries made by them respectively, is that such entries represented all the services performed by defendant for plaintiff during the period. The pages from the account books of the defendant, in evidence, also tend to corroborate the testimony of the defendant in this respect, but from the fact that the defendant himself acknowledged the receipt of payments in connection with the services rendered between April 15 and June 29, 1936, the charges and credits for which are not reflected in the entries on the pages in evidence, tends to prove that said entries did not reflect all the transactions had by the defendant with reference to such treatment.

The evidence tending to prove the termination of the relationship August 3, 1937, and within one year preceding the commencement of the action, is positive and direct and not in any way incredible.

The jury are the sole judges of the credibility of the witnesses. In this situation, and the burden upon the issue of the bar of the statute being upon the defendant it can not be held that the finding of the jury on this issue is against the weight of the evidence.

The assignment of error in the respect mentioned is therefore without merit.

2. The second assignment of error is that there is a total failure of proof on the part of the appellee, disclosed by the record, of any actionable right against the appellant.

In connection with this assignment and some of the assignments which will be hereafter considered, it is essential to consider the legal effect on the liability of the defendant, of the pleaded facts as to the employment of the defendant by the plaintiff, and the evidence in support thereof.

In the petition, the plaintiff pleads that on or about April 15, 1936, she employed defendant in his professional capacity to treat her for the purpose of effecting a reduction in her bodily weight. In his answer, the defendant admits that on or about the date mentioned he entered into a relationship of physician and patient with the plaintiff. All the evidence on the issue of employment proves that the employment was for the purpose alleged in the petition.

It is further alleged in the petition that the defendant, as one of the terms of the employment, represented to plaintiff that the drugs which the defendant gave, furnished and prescribed for the purpose mentioned, pursuant to the employment, to be taken internally by the plaintiff, were harmless and entirely safe. All the evidence, including the admissions made by the defendant as a witness, proves the truth of this allegation.

The relation of physician and surgeon is one arising out of contract, express or implied. **Bowere v Santee, 99 Oh St 361.**

"In the absence of a special agreement a surgeon and physician employed to treat a case professionally, is under an obligation, which the law implies from the employment, to exercise the average degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in the light of the present state of medical and surgical science; and that he will indemnify the patient against any injurious consequences which may result from his want of ordinary skill, care and attention in the execution of his employment." **Gillette v Tucker, 67 Oh St 106,** approved and followed in **Bowers v Santee, 99 Oh St 361. Craig v Chambers, 17 Oh St 254.**

The express contract may include any stipulation not contrary to public pol-

icy. 1 Witthaus and Becker, Medical Jurisprudence, 28-9. 48 C. J. 1111-1112.

In the instant case the contract pleaded and proved, added to the obligation of the physician and surgeon, an obligation which he would not have had under an implied contract, in that as one of the terms of the contract of employment he represented the drugs administered would be harmless and entirely safe.

An affirmation made by one party to a contract is a warranty if such party assumes to assert a fact of which the other party is ignorant. 55 C. J. 681.

In the instant case the plaintiff was ignorant of the fact which the defendant represented, and the representation that the drugs to be given were entirely safe and harmless therefore constituted in law a warranty to that effect, and such warranty is not against public policy.

Under this warranty the defendant was liable in damages to the plaintiff if there was a breach thereof and plaintiff there by sustained damages, irrespective of whether the defendant was unskillful or negligent in administering the treatment to plaintiff.

In the instant case there is evidence tending to prove the breach of the warranty by the defendant in the administration of pills containing dinitrophenol which were not harmless and not entirely safe, and that the administration thereof was the proximate cause of plaintiff's cataracts, and that plaintiff sustained damages by reason thereof, which without additional evidence of unskillfulness or negligence would entitle plaintiff to recover. But in addition to this evidence there is evidence including the evidence of the defendant that the pills given by him to plaintiff in connection with the treatment contain thyroid and not dinitrophenol, tending to prove negligence and unskillfulness in the administration thereof in that treatments comprehending the administration of pills containing dinitrophenol were not in conformity with the usual and approved methods used by the ordinary practicing physician in Lima and vicinity for effecting reduction in weight during the period in which such pills were administered, which, with the other evidence, entitled plaintiff to recover on the ground of negligence without regard to warranty.

This assignment of error is therefore also without merit.

3. The third assignment of error is that the verdict and judgment are against the weight of the evidence and the result of passion and prejudice.

With reference to the contention that the judgment is against the weight of the evidence, the record discloses competent, credible and substantial evidence tending to prove each and every element essential to sustain the verdict and judgment. The mere fact that the judgment under review is contradicted by or in conflict with other evidence in the case, is no ground for reversal. So long as there is, as in this case, a real conflict in the evidence in the sense that reasonable men might honestly vary in their conclusions as to whether on the whole record the judgment rendered below is or is not supported by the evidence, such judgment will not be disturbed by the reviewing court. 2 O. Jur. p. 761, §667.

Defendant's contention that the judgment is excessive is because of the admission in evidence and the submission to the jury as items of damages which are presumably included in the judgment, of medical, surgical and hospital bills incurred by the plaintiff in connection with the treatment for and removal of cataracts which formed in her eyes. This contention is based on the assumption that plaintiff's husband was liable for the payment of these bills and that the bills therefore did not constitute items of damages for which a recovery could be had by plaintiff.

While under the law a husband is primarily liable for services of the character mentioned, furnished to his wife, a wife may by contract charge herself with such liability.

That the plaintiff so contracted, the evidence tends to prove as the bills are charged to her. Under this evidence the bills constituted proper items of damages for consideration by the jury and inclusion in the judgment.

In his brief, the defendant discussed his contention of passion and prejudice on the part of the jury, under his next assignment of error and we will accordingly discuss this contention under the same assignment.

For the reasons mentioned we find no error prejudicial to defendant, in any of the respects specified and argued under this assignment.

4-5. The fourth assignment of error is that there was misconduct of the appellee and her counsel in the court below, in placing on the witness stand other patients of the appellant alleged to have taken the same medicine as given by appellant to appellee, and who appeared in court in dark glasses thus indicating trouble with their eyes, and who were led to the witness stand by counsel for the appellee and placed thereon in a manner to create the impression in the minds of the jury that said proposed witnesses were blind, counsel knowing that such action was incompetent, improper and unlawful and knowing that the evidence to be elicited from such witnesses was improper, irrelevant and unlawful.

The fifth assignment of error is based generally on the same state of facts charged in the fourth assignment, the claimed error being the production of the patients as witnesses and in evidence.

As these assignments involve the same subject matter they will be discussed together.

As appears from the statement of facts hereinbefore set forth, the defendant admitted on cross-examination that he had administered to Anna Zada Squire, Doris Hughes, Maud Miller and Lucille Wyre, the same kind of pills he had given to Maurine Morningstar in his treatments of her commencing April 15, 1936.

These persons were called as witnesses on behalf of plaintiff but objections of defendant to questions asked them were sustained by the court. Proffers of proof were made by the plaintiff to the effect that if these witnesses had been permitted to answer the questions asked them they would have testified that the pills given them by the defendant were yellow centered and contained dinitrophenol, and that following the taking of the pills each of them developed cataracts.

Assignments four and five relate to the foregoing state of facts.

It is obvious that if the testimony sought to be elicited from these witnesses was admissible for any purpose, neither of the assignments is meritorious so our discussion of these assignments will be directed to the question of the admissibility of the testimony.

It is clear that upon the issue of breach of warranty as plead and in evidence and as hereinbefore discussed under assignment two, the evidence of these witnesses as proffered was admissible both for the purpose of proving the identity and content of the pills administered to the plaintiff, as well as the harmful effects of the same on the human system; and in view of the denial by defendant that he had administered to plaintiff pills containing dinitrophenol, and his admission that he had administered the same treatment to the witnesses mentioned that he had administered to plaintiff, was admissible upon the other issues of the case for the purpose of proving identity and content of pills administered to plaintiff. In view of the foregoing, whether the evidence was admissible on the issues of the case other than the issue of breach of warranty for the purpose of proving the harmful effect thereof on the human system, is not material and is not decided.

The proffered evidence of the witnesses being properly admissible for the purpose mentioned, this assignment of error was without foundation.

6. The sixth assignment of error relates to claimed error by the court in not sustaining the motion of defendant for a directed verdict at the close of

450

plaintiff's case in chief, and in not sustaining motion of defendant for a directed verdict at the close of all the evidence in the case.

This assignment involves the same legal question as is involved in assignment number two, and for the reasons mentioned in the discussion of assignment number two, is without basis.

7. The seventh assignment of error is that the findings of fact made by the jury in the court below at the request of the appellant, are against the manifest weight of the evidence and are not sustained by any sufficient evidence.

This assignment involves the same question as assignment number three, and for the reasons mentioned in the discussion of this assignment, is without merit.

· 8. The eighth and last assignment is error of the court in permitting the introduction of evidence in behalf of appellee, to which objection was made at the time, and error in not admitting evidence offered by the appellant.

This assignment of error involves many matters which we have heretofore discussed and determined adversely to defendant, under the other assignments of error.

We have considered the matters not so discussed, and upon an examination of the record and without going into detail, we find upon the whole record that there was no error in any of the respects specified and argued under this assignment of error prejudicial to defendant.

Finding no error in any of the respects specified and argued in appellant's brief, the judgment of the Common Pleas Court will be affirmed at costs of appellant, and the cause remanded for execution.