**Catherine PANKO, Admx. of the Estate of Margaret R. Barrett, Dec'd, Appellant,**

v.

**CONSOLIDATED MUTUAL INSURANCE COMPANY.**

No. 17755.

United States Court of Appeals Third Circuit.

Argued Sept. 23, 1969.

Decided Jan. 5, 1970.

**42**

Edwin E. Naythons, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellant.

S. Robert Levant, Ehrenreich, Sidkoff, Edelstein & Peril, Philadelphia, Pa., for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

This appeal has been taken from an adverse summary judgment in an action by the appellant against Consolidated Mutual Insurance Company for allegedly inducing a doctor to breach professional and fiduciary duties that he owed to appellant's decedent by divulging information about her condition while she was under his care.

Mrs. Barrett, the appellant's decedent, consulted a cancer specialist in Philadelphia after she slipped and fell in the aisle of a food market operated by Food Fair Stores, Inc., in New Jersey. Mrs. Barrett subsequently brought suit against Food Fair in the United States District Court for the District of New Jersey, alleging that trauma resulting from her fall had activated and aggravated a dormant cancer of the right breast. Thereafter, Consolidated Mutual, Food Fair's liability insurer, wrote to the cancer specialist in his capacity as Mrs. Barrett's treating physician, and requested that he fill out a medical report form relating to Mrs. Barrett's condition. The doctor completed the form and returned it without informing Mrs. Barrett and without obtaining any authorization from her.

In answer to one of the questions on the form, the doctor stated:

"It is clear that this woman's difficulties with advanced carcinoma of the breast were not a result of her accident. Whether the accident exaggerated her troubles is speculative. * * * "

The doctor allegedly discussed Mrs. Barrett's condition with representatives of

Food Fair and Consolidated Mutual, and ultimately testified and accepted compensation as an expert witness for Food Fair at the trial of the personal injury action in February, 1967.

Shortly before the trial, the doctor wrote a letter to Mrs. Barrett stating:

"I have been informed by the attornies [sic] for the defense that I am likely to have to respond to subpoena at your trial. I wanted to let you know that this might well turn out to be the case, so that I would not appear to be doing anything behind your back."

Except for this letter, Mrs. Barrett was not advised of the doctor's communications with the insurance company, and she did not consent to the doctor's disclosures at any time.

Mrs. Barrett died on March 17, 1967, and her suit against Food Fair was carried on by her administratrix. A jury verdict in favor of Food Fair in that action was affirmed by this court. Panko v. Food Fair Stores, Inc., 3d Cir.1968, 403 F.2d 62 (per curiam).[1]

The present suit against Consolidated Mutual for allegedly inducing the doctor to divulge information about Mrs. Barrett's condition was instituted in a state court and removed to the United States District Court for the Eastern District of Pennsylvania on the ground of diversity of citizenship. An amount in excess of $10,000 was claimed as compensation for the loss of the prior personal injury action and as punitive damages. Since jurisdiction is based on diversity, the law of Pennsylvania, including its choice-of-law rules, furnishes the principles to determine liability. Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. However, the district court did not attempt to use the functional approach suggested by Griffith v. United Air Lines, Inc., 1964, 416 Pa. 1, 203 A.2d 796, to solve the difficult choice-of-law problem presented by the facts,[2] apparently because it found no significant difference between the relevant laws of New Jersey and Pennsylvania.

The specific conduct alleged in the complaint to establish that the insurance company tortiously induced divulgence of confidential information consisted of requesting the doctor to fill out a medical report form, discussing Mrs. Barrett's condition with the doctor, and securing the doctor's testimony. All of these allegedly wrongful acts were committed by agents of the insurance company after commencement of Mrs. Barrett's negligence suit against Food Fair, and the only injury alleged as the basis for the present action is the loss of that suit.

In order to sustain her cause of action against the insurance company for inducement, plaintiff must be able to show that the doctor's disclosures themselves constituted an actionable wrong,[3]

---

1. On appeal from the judgment in the personal injury suit, this court found no error in the trial court's charge regarding the doctor's professional conduct. 403 F.2d at 64. The trial judge had instructed the jury that "[n]o inference of improper professional conduct * * * whatsoever" should be drawn from the doctor's appearance and testimony at trial, for the reason that "[w]hen a patient makes a claim involving his or her health, the privilege of physician-patient nondisclosure must give way as a matter of policy to the broader interests involved in the administration of justice in adversary litigation."

2. The doctor-patient relationship arose in Pennsylvania, and the district court found that the doctor's disclosures to the insurance company took place there. In making inquiries of the doctor, Consolidated Mutual purported to act in defense of a suit brought against its insured in New Jersey on the basis of an alleged tort committed in New Jersey. The administratrix is a Pennsylvania citizen, and Consolidated Mutual is a New York corporation with a principal place of business in New York.

3. See Hammonds v. Aetna Cas. & Sur. Co., N.D.Ohio 1965, 237 F.Supp. 96, 101. In *Hammonds*, the court denied a motion to dismiss a patient's suit against an insurance company for inducing a doctor to divulge medical information about the patient. The patient had previously sued

and that the wrongful disclosures caused the adverse verdict.[4] Since the disclosures made by the doctor during the course of his testimony at trial of the prior negligence action were not wrongful,[5] only the pre-trial disclosures could furnish a basis for this action. But even assuming that the pre-trial disclosures were tortious, the allegations of the complaint and the facts established on motion for summary judgment provide no basis for an affirmative finding that the pre-trial disclosures resulted in the specific injury alleged, namely, the loss of Mrs. Barrett's suit against Food Fair for personal injury.[6]

The judgment will be affirmed.

the hospital for injuries resulting from the collapse of his hospital bed, and the hospital's insurer had contacted the patient's physician, whom it also insured, and obtained information by falsely representing that the insurer was investigating a claim against the doctor. The court based its denial of the motion to dismiss on Ohio's privileged communication statute and on Ohio's medical licensing statute, which proscribed disclosure of confidential medical information. The court noted that the few precedents indicating the availability of an action against physicians for breaches of medical confidence were likewise grounded on specific statutory prohibitions. 237 F.Supp. at 101, citing Berry v. Moench, 1958, 8 Utah 2d 191, 331 P.2d 814, 73 A.L.R.2d 315, and Simonsen v. Swenson, 1920, 104 Neb. 224, 177 N.W. 831, 9 A.L.R. 1250. But where the claim has been based on disclosures made during judicial proceedings relief has been denied. Boyd v. Wynn, 1941, 286 Ky. 173, 150 S.W.2d 648; Smith v. Driscoll, 1917, 94 Wash. 441, 162 P. 572, L.R.A.1917C, 1128.

4. Whether plaintiff's cause of action is viewed as one for inducing breach of a contract with an implied term of secrecy or one for inducing or participating in a breach of fiduciary duty, plaintiff must show a causal connection between the allegedly tortious conduct and the injury complained of, even if the plaintiff succeeds in establishing an intentional unprivileged interference. Cf. Note, Action for Breach of Medical Secrecy Outside

the Courtroom, 1967, 36 U.Cin.L.Rev. 103, 115–119.

5. Mrs. Barrett would not have had the right in either Pennsylvania or New Jersey to prevent a physician from disclosing medical information acquired during the physician-patient relationship and sought to be elicited during the course of a suit brought by Mrs. Barrett on the basis of her medical condition. Pennsylvania: 28 P.S. § 328 (1958); In re Phillips' Estate, 1929, 295 Pa. 349, 145 A. 437; Adamos v. New York Life Ins. Co., W.D.Pa.1937, 22 F.Supp. 162, 164, aff'd on the opinion of the court below, 3d Cir. 1938, 94 F.2d 943 (per curiam). New Jersey: Hague v. Williams, 1962, 37 N.J. 328, 336–337, 181 A.2d 345, 349. Since the events giving rise to this lawsuit, New Jersey has established a physician-patient testimonial privilege by statute effective July 19, 1968, 2A N.J. Stat.Ann. 84A–22.2 (Supp.1968). It appears that this statute, like that of Pennsylvania, applies only to communications, and not to information acquired by physical examination.

6. We express no opinion on the doctor's liability for pre-trial disclosures or on the possibility of recovery for injuries not alleged in this suit. The administratrix is presently maintaining a cause of action directly against the doctor in state court. See Panko v. Ravdin, C.P.Phila.County 1968, 45 Pa.D. & C.2d 743 (denying plaintiff's motion for a protective order against deposition of plaintiff's counsel).